**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | | |
|---|---|---|
| THOMAS M. S., | ) | No. ED CV 19-526-PLA |
| | ) | |
| Plaintiff, | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| v. | ) | |
| | ) | |
| ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**I.**

**PROCEEDINGS**

      Thomas M. S.[1] ("plaintiff") filed this action on March 23, 2019, seeking review of the Commissioner's[2] denial of his application for Supplemental Security Income payments ("SSI"). The parties filed Consents to proceed before a Magistrate Judge on April 10, 2019, and April 11,

---

    [1]   In the interest of protecting plaintiff's privacy, this Memorandum Opinion and Order uses plaintiff's (1) first name and middle and last initials, and (2) year of birth in lieu of a complete birth date. <u>See</u> Fed. R. Civ. P. 5.2(c)(2)(B), Local Rule 5.2-1.

    [2]   Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul, the newly-appointed Commissioner of the Social Security Administration, is hereby substituted as the defendant herein.

2019.  Pursuant to the Court's Order, the parties filed a Joint Submission (alternatively "JS") on December 2, 2019, that addresses their positions concerning the disputed issues in the case.  The Court has taken the Joint Submission under submission without oral argument.

## II.

## BACKGROUND

Plaintiff was born in 1966.  [Administrative Record ("AR") at 33, 249.]  He has no past relevant work experience.  [Id. at 33, 72.]

On October 2, 2014, plaintiff filed an application for SSI payments, alleging that he has been unable to work since August 1, 1984.  [Id. at 249-54.]  After his application was denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ").  [Id. at 143-45.]  A hearing was held on December 22, 2017, at which time plaintiff appeared represented by an attorney, and testified on his own behalf.  [Id. at 41-78.]  A vocational expert ("VE") also testified.  [Id. at 71-74.]  On March 12, 2018, the ALJ issued a decision concluding that plaintiff was not under a disability since October 2, 2014, the date the application was filed.  [Id. at 23-35.]  Plaintiff requested review of the ALJ's decision by the Appeals Council.  [Id. at 248.]  When the Appeals Council denied plaintiff's request for review on February 27, 2019 [id. at 1-5], the ALJ's decision became the final decision of the Commissioner.  See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted).  This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence . . . is 'more than a mere scintilla[,]' . . . [which] means -- and means

only -- 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Biestek v. Berryhill, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (citations omitted); Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Revels, 874 F.3d at 654 (internal quotation marks and citation omitted). However, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." Id. (quoting Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (internal quotation marks omitted)). The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Id. (internal quotation marks and citation omitted); see also SEC v. Chenery Corp., 318 U.S. 80, 87, 63 S. Ct. 454, 87 L. Ed. 626 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. Garcia v. Comm'r of Soc. Sec., 768 F.3d 925, 930 (9th Cir. 2014) (quoting 42 U.S.C. § 423(d)(1)(A)).

## A.    THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lounsbury v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006) (citing Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999)). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Lounsbury,

468 F.3d at 1114.  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id.  If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id.  If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied.  Id.  The claimant has the burden of proving that he is unable to perform past relevant work.  Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).  If the claimant meets this burden, a prima facie case of disability is established.  Id.  The Commissioner then bears the burden of establishing that the claimant is not disabled because there is other work existing in "significant numbers" in the national or regional economy the claimant can do, either (1) by the testimony of a VE, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. part 404, subpart P, appendix 2.  Lounsbury, 468 F.3d at 1114.  The determination of this issue comprises the fifth and final step in the sequential analysis.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 721, 828 n.5 (9th Cir. 1995); Drouin, 966 F.2d at 1257.

**B.      THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ found that plaintiff had no past relevant work.  [AR at 33.]  At step two, the ALJ concluded that plaintiff has the severe impairments of status post head trauma; posttraumatic seizures; affective disorder; and organic mental disorder.  [Id. at 25.]  At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listing.  [Id. at 26.]  The ALJ further

found that plaintiff retained the residual functional capacity ("RFC")[3] to perform medium work as defined in 20 C.F.R. § 416.967(c) as follows:[4]

> [He can] never climb ladders, ropes or scaffolds; must avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc. and all exposure to hazards such as machinery and heights; able to understand, remember and carry out simple one and two step instructions; able to maintain concentration[,] persistence and pace for periods of two hours, perform activities within a schedule, maintain regular attendance, be punctual, and complete a normal workday and workweek, and make simple work-related decisions; limited to infrequent contact with the public but able to relate adequately to coworkers and supervisors; [he] can ask simple questions, request assistance, accept instructions, and respond appropriately to criticism from supervisors; and would also be able to respond appropriately to changes in the work setting and be aware of normal hazards.

[Id. at 28.] At step four, the ALJ concluded that plaintiff has no past relevant work. [Id. at 33.] At step five, based on plaintiff's RFC, vocational factors, and the VE's testimony, the ALJ found that there are jobs existing in significant numbers in the national economy that plaintiff can perform, including work as a "laborer, stores" (Dictionary of Occupational Titles ("DOT") No. 922.687-058), as a "machine feeder" (DOT No. 699.686-010), and as a "hand packager" (DOT No. 920.587-018). [AR at 34.] Accordingly, the ALJ determined that plaintiff was not disabled at any time since October 2, 2014, the date the application was filed. [Id. at 35.]

## V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ erred when he: (1) failed to properly consider the totality and severity of plaintiff's mental impairments and resulting mental limitations; and (2) failed to properly consider plaintiff's subjective symptom testimony. [JS at 4.] As set forth below, the Court agrees with plaintiff and remands for further proceedings.

---

[3]  RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[4]  "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 416.967(c).

**A.    MEDICAL OPINIONS**

**1.    Legal Standard**

"There are three types of medical opinions in social security cases:  those from treating physicians, examining physicians, and non-examining physicians." Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009); see also 20 C.F.R. §§ 404.1502, 404.1527.  The Ninth Circuit has recently reaffirmed that "[t]he medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)) (second alteration in original).  Thus, "[a]s a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester, 81 F.3d at 830; Garrison, 759 F.3d at 1012 (citing Bray v. Comm'r Soc. Sec. Admin., 554 F.3d 1219, 1221, 1227 (9th Cir. 2009)); Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1222 (9th Cir. 2010).  "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830; Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008).

"[T]he ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons." Trevizo, 871 F.3d at 675 (citing Ryan, 528 F.3d at 1198).  "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. (citing Ryan, 528 F.3d at 1198).  When a treating physician's opinion is not controlling, the ALJ should weigh it according to factors such as the nature, extent, and length of the physician-patient working relationship, the frequency of examinations, whether the physician's opinion is supported by and consistent with the record, and the specialization of the physician. Trevizo, 871 F.3d at 676; see 20 C.F.R. § 404.1527(c)(2)-(6).  The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998).  The ALJ "must set forth his own interpretations and explain why they, rather than the

[treating or examining] doctors', are correct." Id.

Although the opinion of a non-examining physician "cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician," Lester, 81 F.3d at 831, state agency physicians are "highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i); Soc. Sec. Ruling 96-6p; Bray, 554 F.3d at 1221, 1227 (the ALJ properly relied "in large part on the DDS physician's assessment" in determining the claimant's RFC and in rejecting the treating doctor's testimony regarding the claimant's functional limitations). Reports of non-examining medical experts "may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

### 2.    Background

In December 1982, when plaintiff was 16 years old, he suffered head trauma after he was thrown off the top of a car and hit his head on the curb. [JS at 5; AR at 46.] Plaintiff was admitted to the hospital from December 7, 1982, through January 21, 1983, as a result of his head trauma. [JS at 5 (citing AR at 49).] He underwent a "craniotomy with right bi-frontal lobectomy for treatment of a right frontal lobe fracture/closed head injury" on December 16, 1982. [AR at 31.] That same year he had seizures, "which now occur infrequently, no more than once or twice a year and [are] treated with medication." [Id.] His last seizure was on August 18, 2014. [Id. at 492, 798.] Plaintiff was previously awarded SSI benefits and started receiving those benefits in 1984. [JS at 5 (citing AR at 70).] Sometime after that, plaintiff was incarcerated and lost his SSI benefits. [AR at 46.] Plaintiff states that according to his prior counsel, plaintiff was previously awarded SSI benefits because his condition equaled listing 12.02 pertaining to neurocognitive disorders. [JS at 5 (citing AR at 46).] Plaintiff was released from incarceration on November 17, 2014, and, at the time of the current hearing, he was living in a "parole house" and was attending weekly group therapy sessions as a condition of his parole. [AR at 46, 48, 51.]

### 3.  RFC Determination

Plaintiff argues that the ALJ's RFC determination was deficient for the following reasons: (1) the ALJ's reasons for giving little weight to the April 2, 2015, neuropsychological evaluation conducted by Grace J. Lee, Ph.D., who performed numerous tests over multiple days as part of plaintiff's evaluation, was not supported by substantial evidence; (2) Dr. Lee's opinions are supported by evaluations performed in 2008 by (a) the California Department of Corrections ("CDCR") [AR at 849-56], and (b) the California Department of Mental Health [id. at 857-63]; (3) the ALJ failed to acknowledge the state agency psychological reviewing consultants' opinions, who all found limitations inconsistent with the RFC and supportive of Dr. Lee's findings; (4) the ALJ erred when he gave "great weight" to the neurological consultative examiner, neurologist Sarah L. Maze, M.D.; and (5) the ALJ failed to provide any analysis as to how he reconciled the state agency psychological opinions with the RFC determination.  [JS at 7-11.]

On December 9, 2014, December 15, 2014, and January 5, 2015, plaintiff underwent a total of eight hours of neuropsychological testing at Loma Linda University Behavioral Health Institute, along with an initial 1.5-hour clinical interview.  [AR at 491-501.]  Dr. Lee's April 2, 2015, report, generated from the results of that testing, reflects that plaintiff is of average intelligence; his processing speed index is in the low average range; his verbal comprehension index is in the average range; he scored in the average range on the working memory index; he performed in the high average range on a measure of working memory and attention and concentration, but demonstrated "variable performances" on tasks involving more complex attention requiring working memory and divided attention; he demonstrated weakness on spontaneous retrieval of semantic knowledge; and, when exposed to large amounts of unstructured information, he quickly reached a point of cognitive saturation and became overwhelmed.  [Id. at 494-99.]  The MMPI-2 testing of personality functioning reflected elevated levels of distress and plaintiff reported persecution and mistreatment by others, symptoms of mental confusion, and bizarre sensory experiences, which Dr. Lee stated would make it difficult for plaintiff "to maintain stable function in the workplace or manage interpersonal relationships, and increase the need for psychiatric treatment and monitoring."  [Id. at 498-99.]  Dr. Lee also noted that traumatic brain injury "has

been known to result in significant changes in personality and disorders of inhibitory and regulatory control, manifesting as disinhibition,[5] impulsivity, and aggression," which "will likely be persistent and continue to impact his daily functioning, including both interpersonal/social functioning as well as occupational functioning." [Id. at 500.] She opined that plaintiff would benefit from psychoeducation regarding his profile of cognitive strengths and weaknesses; may benefit from consultation with a psychologist to seek strategies for anger management and impulse control, as well as to address depression and other symptoms of emotional distress; could benefit from a class in Mindful Awareness Practices; and concluded that "[g]iven the severity of his behavioral problems, it will be difficult for him to maintain steady employment." [Id.]

The ALJ gave Dr. Lee's opinions regarding plaintiff's purported difficulty in maintaining steady employment, inability to work, and limitations that affect his ability to work and/or participate in education or training "little weight" because "they are speculative, conclusory, and inadequately supported by objective clinical findings." [Id. at 32.] He also noted that plaintiff underwent the evaluation "through an attorney referral and in connection with an effort to generate evidence for the current appeal." [Id.] He stated that because Dr. Lee did not have a treating relationship with plaintiff, and has not "obtained a longitudinal picture of [his] medical condition," "her opinion does not merit the same weight that would be given to a treating physician with a treating relationship of a longer duration." [Id.] He also discounted Dr. Lee's opinion because she "apparently relied quite heavily on [plaintiff's] subjective report of symptoms and limitations . . . and seemed to uncritically accept as true most, if not all, of what [he] reported," but "good reasons [exist] for questioning the reliability of [his] subjective complaints." [Id.] The ALJ also noted that because Dr. Lee's opinion that plaintiff is not able to work is an opinion on an issue reserved to the Commissioner, that statement was not entitled to controlling weight and was not given special significance. [Id.] The ALJ concluded that "*based on the findings from this examiner*, the undersigned finds that [plaintiff] would be capable of performing work within the residual functional

⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

    5    Disinhibition indicates a lack of restraint that may be manifested by impulsivity, disregard for others and social norms, aggressive outbursts, misconduct, and oppositional behaviors.

capacity." [Id. (emphasis added).]

The ALJ instead gave "significant weight" to the April 8, 2015, opinion of Dr. Maze, who conducted a one-time consultative *neurological* evaluation of plaintiff, and to the opinions of the "State agency *physical medical consultants* on initial review and upon reconsideration." [Id. (emphasis added).] According to the ALJ, Dr. Maze's "positive findings" included the fact that plaintiff "was disinhibited"; he was able to follow one-part instructions; he was able to recall three out of three items in five minutes; motor examination, sensation, and reflexes were intact and normal; gait was normal; and he was able to stand on his heels and toes. [Id. (citing id. at 781-85).] Dr. Maze opined that plaintiff was capable of a range of medium work; can frequently perform fine motor activities with both arms; is able to perform fine motor activities with both legs; and would "function best in a very low stress environment with minimal contact with others." [Id. at 33 (citing id. at 784).] The ALJ noted that Dr. Maze's opinions were "generally consistent" with the opinions of the State agency *physical* reviewing medical consultants "in that they all assess [plaintiff] is able to perform a range of work at the medium exertional level with some differences in the degree of specific function-by-function limitations as well as mental functional limitations that are consistent with the findings herein." [Id.]

Plaintiff submits that the ALJ completely failed to mention the *mental* residual functional capacity assessments of the three state agency reviewing consultants: the July 30, 2014, assessment by Dan Funkenstein, M.D. (who reviewed plaintiff's CDCR and other records) [id. at 86-88]; the April 24, 2015, assessment by Cal VanderPlate, Ph.D. (who reviewed Dr. Lee's report as well as plaintiff's CDCR and other records) [id. at 102-04]; and the October 1, 2015, assessment by Anna M. Franco, Psy.D. (who reviewed Dr. Lee's reports as well as plaintiff's CDCR and other records). [Id. at 121-23.] Plaintiff notes that the assessments of these three reviewing consultants reflect the following **moderate** limitations in plaintiff's mental residual functional capacity: perform sustained work activities (all three); understand and remember detailed instructions (Dr. Funkenstein); carry out detailed instructions (all three); maintain concentration and attention for extended periods (all three); perform activities within a schedule, maintain regular attendance, and be functional within customary tolerances (Dr. Funkenstein);

sustain an ordinary routine without special supervision (Dr. Funkenstein); complete a normal work day and work week without interruptions from psychologically-based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods (all three); interact appropriately with the general public (all three); accept instructions and respond appropriately to criticism from supervisors (all three); get along with co-workers or peers without distracting them or exhibiting behavioral extremes (Dr. VanderPlate and Dr. Franco); respond appropriately to changes in the work setting (all three); and work in coordination with others without interruption from psychologically-based symptoms (Dr. VanderPlate and Dr. Franco).

Plaintiff argues that these three assessments support the opinion of Dr. Lee that plaintiff is "likely [to] continue to experience difficulties and limits in terms of managing and controlling his behavior," and reflect that plaintiff will have difficulty persisting at work activity. [JS at 10 (citing AR at 500).] He further states that they also are consistent with Dr. Lee's conclusion that "given the severity of [plaintiff's] behavioral problems, it will be difficult for him to maintain steady employment." [Id. (citing AR at 500).] He argues that the ALJ's conclusion that plaintiff is able to "maintain concentration[,] persistence and pace for periods of two hours, perform activities within a schedule, maintain regular attendance, be punctual, and complete a normal work day and work week" is inconsistent with the opinions of Dr. Lee and the three state agency reviewers, and the ALJ failed to provide any rationale as to why he "apparently rejected certain portions of the medical evidence." [Id. at 10-11.] He also observes that the ALJ's RFC limitations "appear to be completely at odds with the[] moderate limitations [assessed] by his own state agency physicians." [Id. at 10.]

The Court agrees. For instance, although the ALJ found plaintiff was able to relate *adequately* to co-workers and supervisors, respond appropriately to criticism from supervisors, and respond appropriately to changes in the work setting [AR at 28], the three state agency mental health reviewers found plaintiff *moderately limited* in each of these areas. Even Dr. Maze -- whose opinion the ALJ gave "significant weight" -- opined that plaintiff should have "*minimal* contact with others" [id. at 784 (emphasis added)], thus impliedly finding that plaintiff should have minimal contact not only with the general public, but also with co-workers and supervisors, and, therefore,

that he may have difficulty in his ability to respond appropriately to criticism from supervisors, and work in coordination with others without disrupting them or without interruption from psychologically-based symptoms. Although Dr. VanderPlate and Dr. Franco specifically found that plaintiff was moderately limited in his ability to accept instructions and respond appropriately to criticism from supervisors, to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and to respond appropriately to changes in the work setting [see, e.g., id. at 103, 104, 122], both also determined that plaintiff was "limited to infrequent contact with the public" but, without explanation, also determined in their narrative report that he was "able to relate adequately to coworkers and supervisors" and has no limitations with respect to asking questions, requesting assistance, accepting instructions, and "respond[ing] appropriately to criticism from supervisors." [Id. at 104, 122.] Neither the ALJ nor the reviewers provided an explanation for discounting the "moderate" social limitations with respect to interactions with coworkers and supervisors as found by these reviewers, which appear to be inconsistent with their narrative discussions of plaintiff's mental RFC ("MRFC") in those same areas.[6]

Plaintiff also points out that the ALJ rejected the opinions of Dr. Lee, a "Board Certified Psychologist at a teaching facility" who administered "numerous psychological tests and evaluation[s]" over a period of three days, in part because Dr. Lee did not have a treating relationship with plaintiff or a longitudinal picture of his medical condition, and because she relied heavily on plaintiff's subjective symptom allegations. [JS at 6-7.] He deems it ironic that the ALJ nevertheless attributed significant weight to the opinions of non-examining/non-treating state

---

[6] The form used by the state agency reviewers "explains" that the reviewer's finding regarding the claimant's degree of limitation (i.e., not significantly limited, moderately limited, markedly limited) in a work-related domain is evidence that helps to "determine the individual's ability to perform sustained work activities," but that the actual mental residual functional capacity assessment "is recorded in the narrative discussion(s), which describes how the evidence supports each conclusion." [AR at 102 (emphasis added).] Thus, while Dr. VanderPlate's MRFC limiting plaintiff to infrequent contact with the public is clearly supported by his finding that plaintiff was moderately limited in his ability to interact appropriately with the general public, it is less than clear why his finding of moderate limitations in responding to criticism from supervisors, and relating to coworkers and supervisors, supports an MRFC that plaintiff can relate adequately to his coworkers and supervisors, and can respond appropriately to criticism from his coworkers.

agency physicians who assessed plaintiff's *physical* condition, as well as a single neurological consultative examiner (Dr. Maze), all of "who[m] were actually involved with [plaintiff] less than Dr. Lee," who conducted "significant testing . . . prior to rendering her opinions." [Id. at 7.]

Again, the Court agrees with plaintiff. In contrast to Dr. Lee's extensive battery of *neuropsychological* testing over a period of several days, Dr. Maze evaluated plaintiff on one occasion and, in addition to obtaining plaintiff's medical and psychiatric history from plaintiff and his mother, her sole mental evaluation consisted of a mental status examination. [AR at 782.] Otherwise, Dr. Maze's examination consisted of physical signs and symptoms of plaintiff's *neurological* functioning (e.g., visual acuity, motor strength examination, sensory examination, reflex testing, coordination evaluations, and gait assessment). [Id. at 782-84.]

The ALJ also discounted the opinions of Dr. Lee because they "relied quite heavily" on plaintiff's self-reports, and, according to the ALJ, "there exist good reasons for questioning the reliability of [plaintiff's] subjective complaints." [Id. at 32.] However, notwithstanding Dr. Maze's limited mental status testing, Dr. Maze also reviewed (and relied on) Dr. Lee's evaluation, noting that Dr. Lee had diagnosed plaintiff with a psychotic disorder [id. at 781], and an April 2014 CDCR assessment in which plaintiff was diagnosed with a mood disorder with narcissistic traits and seizure disorder. [Id. (citing id. at 661).] Dr. Maze also obtained plaintiff's history and current complaints directly from plaintiff and his mother [id. at 781, 782], and stated that she considered plaintiff a "reliable historian." [Id. at 781.] She observed that he "becomes very angry very easily with minimal provocation," and that he has had "multiple psychiatric hospitalizations related to his anger." [Id. at 782.] Based on plaintiff's reports, Dr. Lee's evaluation, and the CDCR records, Dr. Maze also noted that plaintiff "has a history of psychiatric hospitalizations and incarceration. There are concerns that he has a mood disorder." [Id. at 784.] She then concluded that plaintiff "would function best in a very low stress environment with minimal contact with others." [Id.] Thus, Dr. Maze -- like Dr. Lee -- also impliedly "relied heavily" on plaintiff's subjective symptom allegations

with respect to her findings regarding his mental functioning.[7]

If a treating (or examining) provider's opinions are based "to a large extent" on an applicant's self-reports and not on clinical evidence, and the ALJ properly finds the applicant not credible (which, as discussed below, is not the case here), the ALJ may discount the treating provider's opinion. Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir.2008); see also Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005). However, when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion. See Ryan, 528 F.3d at 1199-1200.

Here, in addition to plaintiff's self-reported psychosocial, medical, educational, and occupational history, Dr. Lee based plaintiff's diagnosis and her recommendations on the extensive intellectual and neuropsychological test data obtained from the battery of approximately fifteen intellectual and neuropsychological tests administered over a three-day period, and behavioral observations made by the examiners during the testing. There is nothing in the record to suggest that either Dr. Lee (or any provider) "disbelieved [plaintiff's] description of [his] symptoms, or that [Dr. Lee] . . . relied on those descriptions more heavily than [on her] own clinical observations in reaching [her] conclusion[s] . . ." regarding plaintiff's work-related limitations. Ryan, 528 F.3d at 1199-1200 (citing Regennitter v. Comm'r Soc. Sec. Admin., 166 F.3d 1294, 1300 (9th Cir. 1999) (substantial evidence did not support ALJ's finding that examining psychologists took claimant's "statements at face value" where psychologists' reports did not contain "any indication that [the claimant] was malingering or deceptive")). In fact, the ALJ offered no basis for his conclusion that Dr. Lee's opinions were based more heavily on plaintiff's self-reports (or that Dr. Maze's opinions were *not* so heavily based on self-reports), and substantial evidence does not support such a conclusion. This was not a specific and legitimate reason, supported by substantial evidence, to discount Dr. Lee's opinions.

Additionally, the ALJ's conclusion that "*based on the findings from [Dr. Lee]*, the

---

[7]    In fact, Dr. Maze may have relied on plaintiff's subjective statements with respect to his mental limitations even more heavily than did Dr. Lee as Dr. Maze did not conduct any neuropsychological testing.

14

undersigned finds that [plaintiff] would be capable of performing work within the residual functional capacity" [AR at 32], also lacks substantial support. Dr. Lee's findings include the following: plaintiff exhibited variable performance on tasks of more complex attention requiring working memory and divided attention; his performance on tasks involving rapid visual discrimination and graphomotor speed were a relative weakness; his spontaneous retrieval of semantic knowledge is a relative weakness; his psychiatric symptoms (aggression, anger, hostility, social withdrawal, distrust, mental confusion, depression, anxiety, sleep disturbance, and gastrointestinal problems) make it difficult for him to maintain stable functioning in a workplace, or manage interpersonal relationships, and increase the need for psychiatric treatment and monitoring; and a history of impulsive and aggressive behavior. [Id. at 493-500.] All of these findings are arguably inconsistent with the ALJ's RFC findings relating to plaintiff's ability to complete a normal workday and workweek, ability to relate adequately to coworkers and supervisors, ability to accept criticism from supervisors, and ability to respond appropriately to changes in the work setting. [Id. at 28.]

Finally, the ALJ discounted Dr. Lee's evaluation based on the fact that he underwent that examination "through an attorney referral and in connection with an effort to generate evidence for the current appeal." [Id. at 32.] The Court notes that Dr. Maze's evaluation, as well as the opinions of the state agency reviewing consultants, were essentially obtained for the very same reason, albeit through a referral from the Commissioner. Thus, this was not a specific and legitimate reason supported by substantial evidence to discount Dr. Lee's opinions.

Based on the foregoing, there is corroboration in the record to support Dr. Lee's opinions and the ALJ's reasons for giving Dr. Lee's opinions little weight are not specific and legitimate, or supported by substantial evidence. Remand is warranted on this issue.

/

/

/

/

/

/

**B.     SUBJECTIVE SYMPTOM TESTIMONY**

**1.     Legal Standard**

Prior to the ALJ's assessment in this case, Social Security Ruling ("SSR")[8] 16-3p went into effect.  See SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017).[9]  SSR 16-3p supersedes SSR 96-7p, the previous policy governing the evaluation of subjective symptoms.  SSR 16-3p, 2017 WL 5180304, at *2.  SSR 16-3p indicates that "we are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term."  Id.  Moreover, "[i]n doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character[;] [i]nstead, we will more closely follow our regulatory language regarding symptom evaluation."  Id.; Trevizo, 871 F.3d at 678 n.5.  Thus, the adjudicator "will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation.  The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person."  SSR 16-3p, 2017 WL 5180304, at *11.  The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities."  Id. at *2.  The Ninth Circuit also noted that SSR 16-3p "makes clear what our precedent already required:  that assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms after [the ALJ] find[s] that the

---

[8]     "SSRs do not have the force of law.  However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference.  We will not defer to SSRs if they are inconsistent with the statute or regulations."  Holohan v. Massanari, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (citations omitted).

[9]     SSR 16-3p, originally "effective" on March 28, 2016, was republished on October 25, 2017, with the revision indicating that SSR 16-3p was "applicable [rather than effective] on March 28, 2016."  See 82 Fed. Reg. 49462, 49468 & n.27, 2017 WL 4790249, 4790249 (Oct. 25, 2017); SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017).  Other than also updating "citations to reflect [other] revised regulations that became effective on March 27, 2017," the Administration stated that SSR 16-3p "is otherwise unchanged, and provides guidance about how we evaluate statements regarding the intensity, persistence, and limiting effects of symptoms in disability claims . . . ."  Id.  The Ninth Circuit recently noted that SSR 16-3p is consistent with its prior precedent.  Trevizo, 871 F.3d at 678 n.5 (SSR 16-3p "makes clear what [Ninth Circuit] precedent already required").  Thus, while SSR 16-3p eliminated the use of the term "credibility," case law using that term is still instructive in the Court's analysis.

individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms,' and 'not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness.'" <u>Trevizo</u>, 871 F.3d at 678 n.5 (citing SSR 16-3p).

To determine the extent to which a claimant's symptom testimony must be credited, the Ninth Circuit has "established a two-step analysis." <u>Trevizo</u>, 871 F.3d at 678 (citing <u>Garrison</u>, 759 F.3d at 1014-15). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." <u>Id.</u> (quoting <u>Garrison</u>, 759 F.3d at 1014-15); <u>Treichler v. Comm'r of Soc. Sec. Admin.</u>, 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028, 1036 (9th Cir. 2007)) (internal quotation marks omitted). If the claimant meets the first test, and the ALJ does not make a "finding of malingering based on affirmative evidence thereof" (<u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 883 (9th Cir. 2006)), the ALJ must "evaluate the intensity and persistence of [the] individual's symptoms . . . and determine the extent to which [those] symptoms limit [her] . . . ability to perform work-related activities . . . ." SSR 16-3p, 2017 WL 5180304, at *4. In assessing the intensity and persistence of symptoms, the ALJ must consider a claimant's daily activities; the location, duration, frequency, and intensity of the pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of medication taken to alleviate pain or other symptoms; treatment, other than medication received for relief of pain or other symptoms; any other measures used to relieve pain or other symptoms; and other factors concerning a claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 416.929; <u>see also</u> <u>Smolen v. Chater</u>, 80 F.3d 1273, 1283-84 & n.8; SSR 16-3p, 2017 WL 5180304, at *4 ("[The Commissioner] examine[s] the entire case record, including the objective medical evidence; an individual's statements . . . ; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record.").

Where, as here, plaintiff has presented evidence of an underlying impairment, and the ALJ did not make a finding of malingering, the ALJ's reasons for rejecting a claimant's subjective symptom statements must be specific, clear and convincing. <u>Brown-Hunter v. Colvin</u>, 806 F.3d

487, 488-89 (9th Cir. 2015); <u>Burrell v. Colvin</u>, 775 F.3d 1133, 1136 (9th Cir. 2014) (citing <u>Molina</u> <u>v. Astrue</u>, 674 F.3d 1104, 1112 (9th Cir. 2012)); <u>Trevizo</u>, 871 F.3d at 678 (citing <u>Garrison</u>, 759 F.3d at 1014-15); <u>Treichler</u>, 775 F.3d at 1102. "General findings [regarding a claimant's credibility] are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." <u>Burrell</u>, 775 F.3d at 1138 (quoting <u>Lester</u>, 81 F.3d at 834) (quotation marks omitted). The ALJ's findings "'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" <u>Brown-Hunter</u>, 806 F.3d at 493 (quoting <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc)). A "reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain." <u>Bunnell</u>, 947 F.2d at 346. As such, an "implicit" finding that a plaintiff's testimony is not credible is insufficient. <u>Albalos v. Sullivan</u>, 907 F.2d 871, 874 (9th Cir. 1990) (<u>per</u> <u>curiam</u>).

In determining whether an individual's symptoms will reduce his corresponding capacities to perform work-related activities or abilities to function independently, appropriately, and effectively in an age-appropriate manner, the ALJ "will consider the consistency of the individual's own statements." SSR 16-3p, 2017 WL 5180304, at *8-9; <u>see</u> <u>also</u> <u>Ghanim v. Colvin</u>, 763 F.3d 1154, 1163-64 (9th Cir. 2014). In doing so, the ALJ "will compare statements an individual makes in connection with the individual's claim for disability benefits with any existing statements the individual made under other circumstances." SSR 16-3p, 2017 WL 5180304, at *8. "If an individual's various statements about the intensity, persistence, and limiting effects of symptoms are consistent with one another and consistent with the objective medical evidence and other evidence in the record," the ALJ will determine that an individual's symptoms are more likely to reduce his capacities for work-related activities or reduce the abilities to function independently, appropriately, and effectively in an age-appropriate manner. SSR 16-3p, 2017 WL 5180304, at *9. The ALJ will recognize, however, that inconsistencies in an individual's statements made at varying times "does not necessarily mean they are inaccurate," as symptoms may vary in their intensity, persistence, and functional effects, or may worsen or improve with time. <u>Id.</u>

## 2.    Analysis

Plaintiff contends the ALJ failed to articulate legally sufficient reasons for rejecting plaintiff's subjective symptom testimony. [JS at 16.] The Court agrees.

First, the ALJ found plaintiff's allegations to be "less than fully persuasive," as his allegations are "inconsistent with the objective medical evidence which indicates an attempt by [plaintiff] to exaggerate the severity of his symptoms." [AR at 29.] However, the ALJ never specifically points to any attempt by plaintiff to exaggerate his symptoms, or to any evidence in the record supporting that finding. To the extent that this suggestion is based on the 1983 statements by plaintiff's doctor regarding plaintiff's "motivation" in physical or occupational therapy after his accident, that suggestion is rejected for the reasons discussed below. To the extent the ALJ bases this statement on plaintiff's purportedly inconsistent statements about his prior work history, the Court finds that notwithstanding plaintiff's few admitted attempts at competitive employment in the far distant past (and primarily prior to his brain injury), the ALJ points to no evidence that any treating or examining doctor has considered him to be exaggerating his symptoms. This was not a clear and convincing reason supported by substantial evidence to discount plaintiff's subject symptom testimony.

Next, the ALJ discounts plaintiff's testimony for a number of additional reasons: (1) he has not generally received the type of medical treatment one would expect for a totally disabled individual; (2) his medications have been "very effective" in controlling his seizure symptoms; (3) he has not seen a psychiatrist or been hospitalized since his application date; (4) he has not received any psychiatric treatment, including medications or psychotherapy; (5) he made inconsistent statements "regarding matters relevant to the issue of disability," such as the fact that he testified he has never worked but also reported (a) that he did "karaoke occasionally and will sometimes get paid for it" (but does not do it now because it usually involves being around alcohol and he has not had a drink since 2002); (b) that as a teenager he "worked at a pizza place" for two weeks; and (c) that he occasionally worked as a janitor for his stepfather; and (6) plaintiff's inability to secure a job could be due to a "lack of motivation to work or . . . his incarceration history" based on statements made by one of plaintiff's "treating physicians" suggesting that "motivation was

1  [plaintiff's] biggest problem," that plaintiff's "potential was good if motivation could be improved,"

2  and that his "activities of daily living were limited by his motivation and he has potential of being

3  independent." [Id. at 29 (citing AR at 547).]

4  However, with respect to the ALJ's finding about plaintiff's alleged lack of motivation, the

5  ALJ fails to mention not only that the statements were generated on January 18, 1983, as a result

6  of a "Family Conference," which took place less than a month after plaintiff's accident and related

7  hospitalization, but that the statements related primarily to plaintiff's progress in *physical and

8  occupational therapy* since the December 1982 accident. [Id. at 547.] In fact, with respect to

9  physical therapy, that note also reflects that plaintiff "[t]alks insistently [sic]," he loses his balance

10  when ambulating, he is easily distractible, his endurance is poor, and his "[p]otential is good if

11  motivation could be improved." [Id.] Also noted is that plaintiff ambulates "with minimal to

12  moderate assistance," has moderate-severe difficulty in recall for more lengthy auditory stimulus,

13  his impairments with recall are "related to decreased attention and distractibility," and he

14  demonstrates impaired memory and insight into his status and dsynomia (a difficulty in

15  remembering names or recalling words from memory needed for oral or written expressive

16  language). [Id.] Yet, the ALJ did not appear to consider these findings significant -- citing only to

17  the out-of-context statements made 34 years before the March 2018 hearing regarding plaintiff's

18  alleged lack of motivation in physical and occupational therapy a little more than one month after

19  his very severe accident.

20  Plaintiff notes that he has consistently maintained throughout that he is incapable of

21  performing and persisting at full-time competitive employment due to the combination of his

22  physical and mental impairments, most of which stem from his brain injury in 1982. [JS at 17-18.]

23  With respect to the ALJ's suggestion that plaintiff's testimony that he has never had a job is

24  inconsistent with the fact that he reported that sometimes he got paid for karaoke, that he worked

25  for two weeks at a pizza restaurant, and that he sometimes worked as a janitor for his stepfather,

26  a review of the record cited to by the ALJ does not support the ALJ's findings or accurately depict

27  plaintiff's testimony. For instance, with respect to plaintiff's purported work as a janitor for his

28  stepfather, the record reflects that he reported that he did this work "occasionally" and "*before his

*accident*' (i.e., before 1983 and before age 17). [AR at 756.] Similarly, he testified that he worked at the pizza place when he was a teenager -- again, sometime prior to 1986 (and prior to his accident). [Id. at 61; see, e.g., id. at 850 (CDCR report noting that plaintiff's "first and longest job was at age 16 in a pizza restaurant").] As stated by plaintiff's mother, "[he] has never really had a job - he was injured at age 17." [Id. at 290.] The ALJ nevertheless relied on these few isolated and short attempts at work -- which, in any event, appear to have been more than 30 years in the past and prior to his accident -- to find plaintiff's testimony about his work history to be inconsistent with his testimony that he never worked or applied for work. Given the extremely limited and distant nature of this "prior work," this was not a clear and convincing reason supported by substantial evidence to discount plaintiff's subjective symptom testimony.

Finally, to the extent the ALJ discounted plaintiff's allegations because his treatment has been conservative, this reason also is not clear and convincing. In fact, the ALJ concedes that plaintiff has "received various forms of treatment and has been prescribed and has taken appropriate medications for the allegedly disabling symptoms and impairments." [Id. at 29.] He notes -- correctly -- that plaintiff's seizures have been well-controlled with medications. [Id.] He also notes that plaintiff denied seeing a psychiatrist, being hospitalized for psychiatric treatment since the application date, or receiving any psychiatric treatment "including medications or psychotherapy." [Id.]

An ALJ may properly rely on the fact that only routine and conservative treatment has been prescribed. Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). "Conservative treatment" has been characterized by the Ninth Circuit as, for example, "treat[ment] with an *over-the-counter pain medication*" (see, e.g., Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) (emphasis added); Tommasetti, 533 F.3d at *1040 (holding that the ALJ properly considered the plaintiff's use of "conservative treatment including physical therapy and the use of anti-inflammatory medication, a transcutaneous electrical nerve stimulation unit, and a lumbosacral corset")), or a physician's failure "to prescribe . . . any serious medical treatment for [a claimant's] supposedly excruciating pain." Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999).

Here, however, the ALJ failed to articulate what, if any, treatment was currently

recommended or available for plaintiff's mental and behavioral impairments resulting from his traumatic brain injury. He points to no evidence in the record that anything had been recommended for plaintiff by a physician or was warranted for the mental health conditions and behavioral issues resulting from that injury. [See, e.g., AR at 500 (noting that plaintiff's behavioral deficits such as impulse control, inhibition, and adherence to social norms and conventions "will likely be persistent and continue to impact his daily functioning, including both interpersonal/social functioning as well as occupational function" and that "with his history of severe head injury, partial lobectomy, and recurrent seizures, he will likely continue to experience difficulties and limits in terms of managing and controlling his behavior").] There is no indication that medication or treatment other than therapy had been recommended by any provider. Thus, this was not a specific, clear and convincing reason for discounting plaintiff's subjective symptom testimony.

Based on the foregoing, remand is warranted on this issue.


**VI.**

**REMAND FOR FURTHER PROCEEDINGS**

The Court has discretion to remand or reverse and award benefits. Trevizo, 871 F.3d at 682 (citation omitted). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. Id. (citing Garrison, 759 F.3d at 1019). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Garrison, 759 F.3d at 1021.

In this case, there are outstanding issues that must be resolved before a final determination can be made. In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. First, because the ALJ failed to provide specific and legitimate reasons for discounting the opinions of Dr. Lee, the ALJ on remand shall reassess the medical opinions of record, including the opinions of Dr. Lee. The ALJ must explain the weight afforded to each

opinion and provide legally adequate reasons for any portion of an opinion that the ALJ discounts or rejects. Second, because the ALJ failed to provide specific, clear and convincing reasons, supported by substantial evidence in the case record, for discounting plaintiff's subjective symptom testimony, the ALJ on remand, in accordance with SSR 16-3p, shall reassess plaintiff's subjective allegations and either credit his testimony as true, or provide specific, clear and convincing reasons, supported by substantial evidence in the case record, for discounting or rejecting any testimony. Finally, the ALJ shall reassess plaintiff's RFC and determine, at step five, with the assistance of a VE if necessary, whether there are jobs existing in significant numbers in the national economy that plaintiff can still perform.[10]

## VII.

## CONCLUSION

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: December 17, 2019

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

---

[10] Nothing herein is intended to disrupt the ALJ's step four finding that plaintiff has no past relevant work. [AR at 33.]

23